IN RE RECEIVERSHIP OF MARATHON SAVINGS BANK.

BOONE STATE BANK, Appellant, v. A. L. WHITNEY, Receiver, Appellee.

**BANKS AND BANKING:** Receivership—Claims—Evidence. Evidence reviewed, and held to sustain the findings of the trial court that claimant, in receiving notes from the insolvent bank, was a purchaser, and not an advancer of credit thereon.

*Appeal from Buena Vista District Court.*—JAMES DELAND, Judge.

APRIL 1, 1924.

REHEARING DENIED JUNE 28, 1924.

THIS action, brought and tried as in equity, is a claim filed by appellant in the receivership. The defendant filed a counterclaim. Plaintiff's claim was denied, and the court found for the defendant on the counterclaim. Plaintiff appeals.—*Affirmed.*

*Guy E. Mack, F. Hollingsworth,* and *John A. Hull,* for appellant.

*Heald, Cook & Heald,* for appellee.

PRESTON, J.—The receiver was appointed April 23, 1921. On that day the appellant held certain notes, given by customers of the Marathon Savings Bank to it, which had theretofore been indorsed by the Marathon bank, "without recourse," and had also been indorsed by E. B. Wells individually. Mr. Wells was the president and managing officer of the Marathon concern, and Mr. Ashford was president of appellant bank. The notes referred to amounted to about $29,000, and it is on account of these that appellant makes its claim. A large number of other notes—several hundred—were involved in the dealings between the two banks for eight or nine years, but such notes have been fully paid, and are not in controversy in this action. The Marathon bank carried an account with appellant. When the receiver was appointed, $4,874.43 appeared to the credit of the Marathon bank. This is the amount claimed by appellee and allowed by the court on the counterclaim. Appellant's claim is for advancements of credit made to the Marathon bank of the customers' notes, deposited, as it claims, with the appellant at the time the credits were advanced. Appellee claims that appellant had bought of it, and owned, the notes. It seems to be conceded that the real question in the case is as to the ownership of the notes. Appellant does not declare upon the notes, but on account under an oral contract for the advancement of credit. Whatever rights appellant has, if any, are based upon the oral contract alleged by it. This presents a fact question, which is decisive of the case, although other points are argued.

The oral contract relied upon by appellant is alleged to have been made in 1912, between Mr. Ashford and Mr. Wells, officers of the banks. The terms and provisions of the contract alleged are, as appellant states them: Customers' notes of Marathon Savings Bank were to be sent to appellant by the Marathon bank, for advancements of credit. The credit to be received by Marathon Savings Bank was 75 per cent of the face of the notes, and 25 per cent was to remain in the hands of appellant as a reserve fund, to indemnify it in case of loss. The rate of interest to be charged for carrying the credit was at first 6 per cent. Later, this was changed to 7 per cent. The

notes were to be indorsed without recourse, and were to be returned at maturity, for credit on the books of Marathon Savings Bank. In its claim appellant asks to be allowed the amount it credited the Marathon bank upon its books, upon the deposit of the several notes in its possession at the time of the appointment of the receiver, with interest from the date the credit was entered, less $4,874.43, being the amount of the reserve fund on deposit to the credit of Marathon Savings Bank in appellant's bank at the time of the appointment of the receiver.

Appellant had the burden. But two witnesses testified directly on the question as to whether there was or was not such a contract, Ashford affirming and Wells denying. They appear to be of equal credibility. The notes were sent to appellant by the Marathon bank by letter, and were entered on the discount register of the latter bank. There was no dispute in the evidence as to the method of transacting the business. The notes in suit were sent to appellant, and the Marathon bank received credit for the face of the note at the time it was received, and the Marathon bank drew checks or drafts against this account, from time to time. These checks and drafts were honored by appellant. When the receiver took possession, the books of appellant showed that the Marathon bank had a credit in their bank of $4,874.43. Appellant contends that Ashford is corroborated by other circumstances in the case. One of these circumstances is the long continued transaction of business between the two banks. The evidence does show that business was transacted covering a period of eight or nine years; but, under plaintiff's own evidence, the business was not carried on at all times in accordance with the terms of the alleged oral agreement. Mr. Ashford testifies that it was a part of the agreement that 25 per cent of the amount of the notes should at all times be left with appellant; and yet, under his own evidence, during a considerable portion of the time the business was being carried on, the bank did not hold 25 per cent of the amount of the notes. Twenty-five per cent of $29,000 would be much more than the $4,874.43. For several months before the Marathon bank closed, the balance in the account was much less than 25 per cent. Doubtless the appellant might waive this provision in the con-

tract. But the point here is, as stated by the trial court, that the testimony showing that business was conducted between the two banks in a manner different from that provided for in the alleged contract does not corroborate the testimony of Mr. Ashford as to the terms of the contract. On the contrary, it rather tends to corroborate the testimony of Wells.

There are other circumstances in the record which we think tend to weaken the testimony of Mr. Ashford and corroborate Mr. Wells. For instance, appellant, in its reports to the state banking department and in its published statements, listed such of these notes as it had on hand from time to time, as assets. The other bank, in its reports and statements, did not list such notes among its assets. Again, when the Marathon bank sent a note to appellant, the note was marked off the register of the Marathon bank as paid, and charged to the Boone bank at its face. Upon receipt of such note, appellant credited the face of the note to the account of the Marathon bank, and entered it in its own bills receivable, and thereafter carried it as an asset of its own. The appellant carried but the one account with the Marathon bank, which was an open checking account; and, as said, drafts were drawn from time to time, which were paid. The appellant took no note or other evidence of indebtedness from the Marathon bank.

It would serve no useful purpose to go into further details. The trial court found that appellant had not met the burden, and in this we concur.

The trial court further found that the contract alleged, even if established, would be against public policy, and ought not to be enforced; that to recognize the contract and approve this claim would be to establish a liability for $29,000 which did not appear upon the books of the bank or in any published or official statement made by the bank, and a knowledge of which the state banking department or bank examiners did not or could not have secured from an examination of the bank; that the liability would rest entirely upon a secret oral agreement between the two banks, both of which were under an obligation to disclose and report fully and openly to the banking department all their liabilities.

Since we find that the contract has not been established, we deem it unnecessary to discuss this feature of the case or other questions argued. The judgment is—*Affirmed.*

ARTHUR, C. J., EVANS and VERMILION, JJ., concur.

FAVILLE, J., takes no part.